# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK GRANGETTO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KYUNGTAK MINN, et al.,<br><br>　　　　Defendants.<br>_____/ | CASE NO. 1:10-cv-00701-AWI-SKO<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED**<br><br>(Docs. 12, 13)<br><br>OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff Mark Grangetto ("Plaintiff") is a state prisoner in this civil rights action. At the time of the events described in his complaint, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran"). Plaintiff is suing under Section 1983 for the violation of his rights under the Eighth and Fourteenth Amendments. Plaintiff also alleges violations of 42 U.S.C. §§ 1985 and 1986, and California state law.[1] Plaintiff names Kyungtak Minn, Erene S. Soliman, Edgar Clark, Jeffrey Neubarth, Wang, and Sanchez as defendants ("Defendants"). Plaintiff also identifies Does 1 through 50 as unidentified CDCR personnel who are liable for the claims raised in his complaint.

On August 3, 2010, Defendants Minn, Soliman, Clark, Wang, and Sanchez filed a motion to dismiss. (Docs. #12, 13.) Defendant Neubarth was not named in the original motion to dismiss and instead filed a notice joining the motion on August 31, 2010. (Doc. #20.) Plaintiff contends that

---

[1] Plaintiff's complaint also mentions the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). However, none of Plaintiff's causes of actions is brought under the ADA or RA.

1

1  Neubarth's notice of joinder was untimely. (Doc. #21.) Plaintiff filed an opposition to the motion
2  to dismiss on August 28, 2010. (Doc. #16.) Defendants filed a reply on September 3, 2010.
3     For the reasons set forth below, the Court finds that Plaintiff's first amended complaint fails
4  to state any cognizable federal claims. The Court will recommend that Plaintiff's first amended
5  complaint be dismissed with leave to file a second amended complaint.

**I.  Background**

   **A.  Plaintiff's Claims**

Plaintiff alleges that he suffers from multiple disabilities and medical conditions, including blindness in both eyes, inability to walk, inability to use his left arm, Type I Diabetes, diabetic neuropathy, Hepatitis C, neurological dysfunction, Osteomyelitis, and skin breakdown. During the events described in his complaint, Plaintiff was under the care and custody of CDCR at CSP-Corcoran. Plaintiff alleges that he was "in a chronic state of discomfort and neurogenic pain" due to "the lack of treatment, and the lack of accommodations, such as a proper mattress." (First Am. Compl. for Damages for Willful Violations of Civil Rights and for Pendent State Claims, Doc. 3 ("FAC") ¶ 42.) Plaintiff alleges generally that "[a]t all relevant times, Defendants, and each of them, knew, or should have known, about the medical complications faced by Plaintiff and acted to prevent them."[2] (FAC ¶ 43.) Plaintiff claims Defendants violated his civil rights by providing inadequate or incompetent medical care for his various conditions.

Plaintiff claims that he was prescribed medication "without regard to the contraindications placing Mr. Grangetto's health and safety at risk." (FAC ¶ 45.) "Defendants, including Defendant Minn and his staff, have prescribed and administered psychotropic medications . . . [that] have been known for years to cause neurological damage, including Tardive Dyskinesia, and to cause Diabetes." (FAC ¶ 46.) As a result, Plaintiff developed Type I Diabetes. (FAC ¶ 47.) Plaintiff also alleges that he suffers from symptoms that suggest that he suffers from Tardive Dyskinesia. (FAC ¶¶ 48, 49.) Plaintiff claims that Defendants ignored the risks of diabetes and Tardive Dyskinesia, even after observing indications of Tardive Dyskinesia. (FAC ¶ 50.)

---

[2] The allegation appears to be a typographical error. The Court assumes Plaintiff meant to allege that Defendants did not act to prevent Plaintiff's medical complications.

Plaintiff also alleges that he was given psychotropic medication for years without Plaintiff's informed consent. (FAC ¶ 51.) Plaintiff was informed about the connection between his neurological symptoms and the psychotropic medications on June 1, 2009, by a forensic psychiatrist. (FAC ¶ 52.) On September 15, 2009, Plaintiff "reported the symptoms of Tardive Dyskinesia and requested that CDCR obtain a diagnosis from a qualified neurologist. CDCR refused." (FAC ¶ 53.) "On January 4, 2010, Plaintiff obtained a court order requiring Defendants to stop administering psychotropic medications without Plaintiff's consent." (FAC ¶ 54.) However, Defendants re-instituted the involuntary administration of psychotropic medications at the time Plaintiff's complaint was filed. (FAC ¶ 55.)

Plaintiff also claims that Defendants discontinued Plaintiff's pain medication and caused Plaintiff to suffer painful symptoms of withdrawal. (FAC ¶ 56.) On July 16, 2008, Defendant Neubarth diagnosed Plaintiff with chronic pain but discontinued Plaintiff's pain medication. (*Id.*) Neubarth did not inform Plaintiff about the order discontinuing his pain medication and of the consequences of the symptoms of withdrawal that would result from discontinuing the pain medication. (*Id.*) When Plaintiff began to suffer intense pain from withdrawal, Neubarth did not provide any treatment. (*Id.*) Plaintiff complained about the withdrawal pains and begged for pain medication.[3] (FAC ¶ 57.) Plaintiff began striking the door to his hospital room for relief. (*Id.*) "When Defendants responded . . . [they] dragged Plaintiff to a different room where he was forced into a five-point restraint and left on a thin mattress on the floor for days."[4] (FAC ¶ 58.)

While restrained, Plaintiff suffered from "skin breakdown." (FAC ¶ 59.) Plaintiff alleges that "Defendants then failed to treat, or provided negligent treatment of, the skin breakdown." (FAC ¶ 60.) When Plaintiff requested treatment, "Defendants retaliated against Plaintiff when they ignored his request for treatment and dragged him to a different room where he was forced into a five-point restraint and left on a thin mattress on the floor for days." (FAC ¶ 62.)

---

[3] Plaintiff's complaint does not specifically identify to whom he was begging for help.

[4] Plaintiff's vague reference to "Defendants" fails to identify which defendants responded to his pleas or which defendants dragged Plaintiff to a different room and placed him in restraints.

3

Plaintiff also alleges that Defendants failed to treat Plaintiff's diabetes, and as a result, Plaintiff suffers from "complications," such as "its effect on Plaintiff's circulation." (FAC ¶ 68.) Plaintiff contends that poor circulation has caused ingrown toenails and infection in his toes. (FAC ¶ 69.) Plaintiff contends that "Defendants, including Clark and Neubarth, ordered surgery to treat the condition" but "Defendant Sanchez negligently performed the surgery" and "Defendants botched Plaintiff's post-surgical care." (FAC ¶ 69.) Plaintiff alleges that the surgical wounds on his toes became infected after the surgery "as a result of neglect and deliberate indifference." (FAC ¶ 69.) Plaintiff further alleges that the treatment of the infection "was botched" and "the infection spread into Plaintiff's bones[,] and he now suffers from Osteomyelitis." (FAC ¶ 70.)

Plaintiff contends that "Defendants failed to properly train co-defendants to protect patient health and safety." (FAC ¶ 63.) Plaintiff also contends that "Defendants retaliate[d] against Plaintiff for filing complaints in violation of his rights as a patient and his right to free speech." (FAC ¶ 64.) Plaintiff alleges that "[s]ome complaints or grievances are not processed by staff as a way to retaliate against Plaintiff." (FAC ¶ 66.)

Plaintiff's First Cause of Action claims that all defendants violated Plaintiff's Eighth and Fourteenth Amendment rights through their deliberate indifference to Plaintiff's health and safety. (FAC ¶¶ 73-87.) Plaintiff's Second Cause of Action claims that all defendants violated California Welfare & Institutions Code § 15600, et. seq., by failing to provide Plaintiff, a "dependent adult," with adequate medical care. (FAC ¶¶ 88-100.) Plaintiff's Third Cause of Action claims that all defendants provided negligent medical treatment. (FAC ¶¶ 101-07.) Plaintiff's Fourth Cause of Action claims that all defendants retaliated against Plaintiff for his exercise of his constitutional rights. (FAC ¶¶ 108-12.) Plaintiff's Fifth Cause of Action claims that all defendants conspired to deprive Plaintiff of his civil rights in violation of 42 U.S.C. §§ 1985-1986. (FAC ¶¶ 113-24.) Plaintiff's Sixth Cause of Action claims that all defendants are liable for intentional infliction of emotional distress. (FAC ¶¶ 125-33.)

### B.     Defendants' Motion to Dismiss

Defendants' motion to dismiss argues that Plaintiff's first amended complaint fails to state any cognizable federal or state law claims. Defendants also argue that Plaintiff's claims for

4

1  injunctive relief must be brought in the Plata and Coleman class actions,[5] that Plaintiff has failed to
2  join an indispensible party, that Plaintiff has failed to exhaust administrative remedies, and that the
3  Court should strike Plaintiff's allegations regarding CDCR.  Defendants further argue that, at a
4  minimum, Plaintiff should be required to provide a more definite statement of his claims in an
5  amended complaint.
6     Specifically, Defendants contend that they are entitled to dismissal under Federal Rule of
7  Civil Procedure 12(b)(6) because Plaintiff's first amended complaint fails to state any cognizable
8  claims under Section 1983 or under state law.  With respect to Defendants Minn, Soliman, Clark,
9  Wang, and Sanchez, Defendants contend that Plaintiff has only offered conclusory assertions of
10 liability that are not supported by any facts.  Defendants also note that Plaintiff has failed to allege
11 facts that Defendants personally participated in the deprivation of Plaintiff's constitutional rights,
12 knew that Plaintiff's rights were being violated and failed to intervene, or implemented a policy that
13 was in itself a repudiation of constitutional rights and the moving force of the constitutional
14 violation.

15 **II.    Discussion**

16    **A.    Legal Standard**

17    To survive a motion to dismiss for failure to state a claim, a complaint must meet the
18 pleading standard set by Federal Rule of Civil Procedure 8.  Under Rule 8(a), a complaint must
19 contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.
20 R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual
21 allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me
22 accusation."  Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic
23 Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
24    "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[5] Coleman v. Wilson, 912 F. Supp. 1282 (E.D. Cal. 1992) and Plata v. Davis/Schwarzenegger, No. C-01-1351 THE (N.D. Cal.) are class actions that involve constitutionally adequate medical and mental health care to CDCR inmates.  Defendants assert that Plaintiff is a member of the classes identified in Coleman and Plata; they assert that Plaintiff cannot maintain an individual suit for injunctive and equitable relief where there is an existing class action because it would interfere with the ongoing class action.  (Doc. 13, 5:22-28-7:1.)

relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). When ruling on a motion to dismiss under Rule 12(b)(6), "[a]ll allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party." Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) (citing Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

In addition to the arguments raised in Defendants' motion to dismiss, the Court has an independent obligation to screen Plaintiff's complaint pursuant to 28 U.S.C. § 1915A(a). Section 1915A(a) requires the Court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

### 1. Section 1983 Claims

Defendants contend that Plaintiff's first amended complaint fails to state any claims under Section 1983. Plaintiff claims that Defendants are liable under Section 1983 for violating Plaintiff's Eighth and Fourteenth Amendment rights by providing Plaintiff with deficient medical care. Plaintiff also claims that Defendants violated Plaintiff's First Amendment rights by retaliating against Plaintiff's exercise of his First Amendment right to file grievances against the government.

#### a. Eight Amendment Claims

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met:

6

(1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective "sufficiently culpable state of mind" requirement is met when a prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-03). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. To state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show (1) a serious medical need and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 591 F.3d 1081, 1094-95 (9th Cir. 2010) (en banc) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id. at 1095. A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Id. To constitute deliberate indifference, there must be an objective risk of harm, and the defendant must have subjective awareness of that harm. Id. at 1096.

However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs. See Jett, 439 F.3d at 1096; McGuckin v. Smith,

7

974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1993) (en banc); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

Defendants argue that Plaintiff's first amended complaint "contains a variety of conclusory allegations against unnamed Defendants" and fails to allege any facts that link any individual defendants to any alleged constitutional violations. The Court agrees.

The pleading standard set forth in Iqbal demands that Plaintiff's complaint contain enough factual allegations to support a plausible claim for relief. The complaint must contain more than threadbare allegations that merely recite the basic elements of a cause of action. As established by Farmer, 511 U.S. at 834, and Estelle, 429 U.S. at 104-05, the elements for an Eighth Amendment cause of action based on deficient medical care are 1) a serious medical need and 2) a deliberately indifferent response by each defendant. Taken together, Iqbal, Farmer, and Estelle demand that Plaintiff allege facts that plausibly support the conclusion that each defendant was aware that Plaintiff had a serious medical need and deliberately failed to respond to that need. Since Iqbal prohibits Plaintiff from merely providing a threadbare recital of those elements, Plaintiff must allege discrete facts regarding each defendant's actions, inactions, and state of mind that plausibly support the conclusion that they were aware of Plaintiff's serious medical need and deliberately failed to respond.

The allegations in Plaintiff's first amended complaint provide only a threadbare recital of the elements of his cause of action. The complaint fails to provide much insight as to the conduct of the individual defendants and fails to allege facts that support the inference that each individual defendant acted with deliberate indifference. Most of the allegations in Plaintiff's complaint are levied against "Defendants," a vague and amorphous reference that fails to put any individual defendant on notice of what Plaintiff is alleging regarding that defendant's conduct. The Court notes that the reference to "Defendants" could refer to any or all of the six specifically identified prison officials, or possibly "Does 1 through 50, inclusive."

The imprecise nature of Plaintiff's complaint is best exemplified by his allegation that "Defendants failed to properly train co-defendants to protect patient health and safety." (FAC ¶ 62.) This vague allegation fails to identify which defendants failed to properly train which co-defendants.

8

1  It would be nearly impossible for any defendant to formulate a defense to the allegation since it is
2  unclear whether Plaintiff is accusing him or her of the failure to train or failing to be trained.

3  Similarly, Plaintiff alleges that "Defendants ignored the risks to Plaintiff" posed by his
4  psychotropic medication without identifying which Defendants prescribed the medication and
5  ignored the risks. (*See* FAC ¶ 50.) Plaintiff further alleges that "Defendants dragged Plaintiff to a
6  different room where he was forced into a five-point restraint and left on a thin mattress on the floor
7  for days." (FAC ¶ 58.)

8  It is difficult to believe that all six named Defendants and all 50 Doe defendants collectively
9  dragged Plaintiff into a room and all 56 officials simultaneously placed Plaintiff in five-point
10 restraints or that all 56 Defendants ignored the risks posed by the psychotropic medication.
11 Plaintiff's complaint describes numerous discrete incidents where he was prescribed medications
12 that endangered his health, was deprived of his pain medications, was left in restraints while he
13 suffered skin breakdown, and was not given treatment for diabetes. Except for a handful of
14 allegations which will be discussed in more detail below, Plaintiff's complaint fails to clearly set
15 forth the conduct of each defendant. The Court finds that the vague and ambiguous references to
16 "Defendants" fail to support a plausible claim for relief against any individual defendant.

17 Plaintiff's complaint does raise some allegations that are specific to individual Defendants.
18 For example, Plaintiff alleges that "Defendants, including Defendant Minn and his staff, have
19 prescribed and administered psychotropic medications, such as Geodon, Haldol, Zyprexa, and
20 Seroquel." (FAC ¶ 46.) Plaintiff alleges that those medications caused Plaintiff's diabetes and
21 possible Tardive Dyskinesia. (FAC ¶¶ 47, 48.) However, Plaintiff has not alleged any facts that
22 plausibly support the conclusion that Defendant Minn acted with deliberate indifference. He has
23 not alleged facts showing that there was no legitimate medical reason to prescribe psychotropic
24 medication or that the decision to prescribe psychotropic medication was "medically unacceptable
25 under the circumstances" or was chosen "in conscious disregard of an excessive risk to [Plaintiff's]
26 health." See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted). Plaintiff
27 has only alleged that the drugs were known to cause neurological damage and diabetes and that
28 those negative side effects did manifest in Plaintiff. However, those facts alone do not rise to the

level of deliberate indifference.

Plaintiff further alleges that he began to exhibit signs of Tardive Dyskinesia and that those signs were observed by "Defendants." Plaintiff may be able to state a claim against Defendants who observed the signs of Tardive Dyskinesia, knew that there was an excessive risk to Plaintiff's health if he continued to take the psychotropic medications and knowingly allowed Plaintiff to continue taking the psychotropic medications despite that risk – if their decision was medically unacceptable under the circumstances. However, due to the ambiguous manner in which the complaint is drafted, it is unclear which Defendants, if any, would be liable under those facts. Plaintiff's allegations against Defendant Minn fail to rise to the level of an Eighth Amendment claim.

Plaintiff alleges that Defendant Neubarth diagnosed Plaintiff with chronic pain but then ordered that Plaintiff's pain medication, Methadone, be discontinued. (FAC ¶ 56.) Plaintiff also claims that Neubarth failed to warn Plaintiff about the consequences of withdrawal and failed to treat the symptoms of Plaintiff's withdrawal from his medication. Plaintiff has not alleged any facts that support the inference that Neubarth's actions rose to the level of deliberate indifference, as opposed to mere negligence. There is no indication that the decision to take Plaintiff off Methadone was medically unacceptable under the circumstances or was done maliciously for the purpose of inflicting pain on Plaintiff. Similarly, Plaintiff does not allege that Neubarth's failure to treat Plaintiff's withdrawal symptoms was medically unacceptable or was done maliciously for the purpose of harming Plaintiff. Furthermore, Plaintiff does not identify what treatment, if any, he should have received while suffering symptoms of withdrawal. Plaintiff's allegations against Neubarth fail to rise to the level of an Eighth Amendment claim.

Plaintiff alleges that "Defendants, including Clark and Neubarth, ordered surgery to treat [Plaintiff's ingrown toenails and infection]." (FAC ¶ 69.) It is unclear how Clark or Neubarth are liable under Section 1983 based on this allegation. Plaintiff further alleges that "Defendant Sanchez negligently performed the surgery." (*Id.*) Plaintiff does not allege facts to indicate how the surgery was performed negligently; in any event, mere negligence falls below the state-of-mind standard for Eighth Amendment claims. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of indifference, negligence, or medical malpractice do not support a claim under § 1983

(citing Estelle, 429 U.S. at 105-06 )). Plaintiff's allegations against Clark, Neubarth, and Sanchez fail to rise to the level of an Eighth Amendment claim.

### b. Fourteenth Amendment Claims

Plaintiff alleges that Defendants violated his Fourteenth Amendment rights by failing to provide adequate medical care. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), overruling on other grounds recognized by Nitco Holding Corp. v. Boujikian, 491 F.3d 1086, 1089-90 (9th Cir. 1997).

The Court finds that the Due Process Clause of the Fourteenth Amendment does not provide any additional substantive protection than the Eighth Amendment with respect to Plaintiff's inadequate medical treatment claims. Accordingly, the Court finds that the Fourteenth Amendment does not provide an alternative basis for relief for Plaintiff's claims. See Whitley v. Albers, 475 U.S. 312, 327 (1986) (Due Process Clause does not provide an alternative or greater source of relief for claims where Eighth Amendment serves as primary source of substantive protection to convicted prisoners).

### c. First Amendment Retaliation Claims

Plaintiff claims that Defendants retaliated against him for exercising his First Amendment right to file grievances against the government. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a

prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff alleges that he suffered retaliation after he requested medical treatment when "Defendants" dragged Plaintiff to a room and placed him in restraints. (FAC ¶ 62.) Plaintiff also vaguely alleges that "Defendants retaliate[d] against Plaintiff for filing complaints in violation of his rights as a patient and his right to free speech" and that he "suffers retaliation when he attempts to exercise his rights, or when he attempts to enforce, or report the loss of, his rights." (FAC ¶¶ 64-65.) However, Plaintiff does not identify which specific defendants allegedly retaliated against him. Plaintiff further alleges that "[s]ome complaints or grievances are not processed by staff as a way to retaliate against Plaintiff." (FAC ¶ 66.) However, Plaintiff fails to specify how he was retaliated against or to allege any facts to support the inference that the failure to process Plaintiff's grievances was retaliatory. Plaintiff fails to state any claims for retaliation.

### 2. Conspiracy Claims Under 42 U.S.C. §§ 1985 and 1986

#### a. Section 1985 Claim

In his fifth cause of action, Plaintiff claims that Defendants are liable for conspiring to violate his civil rights. Although Plaintiff does not specify which of the three subsections of Section 1985 was violated, the Court presumes that he is suing under subsection (3), since subsection (1) concerns conspiracies to prevent an officer from performing duties and subsection (2) concerns conspiracies to intimidate parties, witnesses, or jurors.

Section 1985(3) prohibits conspiracies for the purposes of depriving other persons of the equal protection of the laws and conspiracies to intimidate any citizen from giving his support toward an elected official. "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). "The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-

based, invidiously discriminatory animus behind the conspirators' action." Griffin, 403 U.S. at 102. Plaintiff does not allege that there was any racial or class-based discriminatory animus behind Defendants' actions. Accordingly, Plaintiff fails to state a claim under Section 1985(3).

### b. Section 1986 Claim

"Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." Cerrato v. S.F. Cmty. Coll. Dist., 26 F.3d 968, 971 n.7 (9th Cir. 1994). "A claim can be stated under [§] 1986 only if the complaint contains a valid claim under [§] 1985." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) (citing Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985)). Since Plaintiff's complaint does not contain any valid claims under Section 1985, Plaintiff does not state any claims under Section 1986.

### 3. State Law Claims

Defendants raise several arguments regarding the deficiencies in Plaintiff's state law claims. Since Plaintiff's complaint fails to state any federal claims, there is no basis for asserting federal subject matter jurisdiction; therefore, there is no federal claim to which to append any state law claims for purposes of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction when it has dismissed the claims over which it had original jurisdiction). Accordingly, the Court will decline to address Plaintiff's state law claims at this time. However, the vague and ambiguous nature of Plaintiff's factual allegations undoubtedly impacts whether Plaintiff states cognizable state law claims against each individual defendant. To the extent that Plaintiff is able to cure the deficiencies in his federal claims by alleging specific facts against each individual defendant, the specific factual allegations would potentially be remedying deficiencies in Plaintiff's state law claims.

### B. Remaining Arguments

The Court finds that Plaintiff's first amended complaint fails to state any federal claims. Defendants raise a number of other arguments in their motion to dismiss, including the viability of Plaintiff's claims for injunctive relief in light of Plata and Coleman. However, the Court finds that Plaintiff's complaint should be dismissed and will decline to address those arguments at this time.

///

### C. **Defendant Neubarth's Joinder**

Plaintiff contests Defendant Neubarth's joinder to the motion to dismiss. Neubarth was not a party to the original motion to dismiss and instead filed a motion requesting to join the motion to dismiss filed by the other defendants on August 31, 2010. Plaintiff argues that the joinder was untimely because Neubarth's responsive pleading was filed 21 days after service of the summons and Neubarth did not file the notice of joinder until 49 days after service of the summons. Regardless of whether Neubarth properly joined the motion to dismiss, the Court recommends that Plaintiff's complaint be dismissed because it fails to state a claim upon which relief may be granted under 28 U.S.C. § 1915A. Accordingly, it is recommended that Plaintiff's complaint, including Plaintiff's claims against Defendant Neubarth, be dismissed.

### III. **Conclusion and Recommendation**

The Court finds that Plaintiff's first amended complaint fails to state any cognizable claims under federal law. Plaintiff's vague factual allegations fail to plausibly support the conclusion that any defendant violated Plaintiff's constitutionally rights. The Court finds that the deficiencies in the complaint may be cured by amending the complaint and alleging specific facts with respect to the conduct of each individual defendant and how his or her actions violated Plaintiff's constitutional rights. Accordingly, the Court will recommend that Plaintiff's complaint be dismissed with leave to file an amended complaint that cures the deficiencies in his claims.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be GRANTED; and
2. Plaintiff's first amended complaint be DISMISSED, with leave to file an amended complaint.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 10, 2010**            **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE